734

632 A.2d 214

**Eric SPENCER**

v.

**STATE of Maryland.**

**No. 1616, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Oct. 28, 1993.

Nancy M. Cohen, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief) Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Alexander Williams, Jr., State's Atty., for Prince George's County of Upper Marlboro, on the brief), for appellee.

Submitted before BISHOP, GARRITY and CATHELL, JJ.

GARRITY, Judge.

Appellant, Eric Spencer, was charged with first degree felony murder and murder in the second degree. On September 29, 1992, a hearing was held in the Circuit Court for Prince George's County (Femia, J., presiding) on appellant's Motion to Dismiss the indictment on the grounds that this prosecution, following an earlier successful prosecution for assault with intent to murder, assault with intent to disable, assault with intent to rob and a related handgun offense, violated appellant's rights under Maryland common law of *autrefois convict* and the federal constitutional protection against double jeopardy. Appellant's motion was denied and this interlocutory appeal followed.

## BACKGROUND

On November 4, 1991, appellant was convicted of assault with intent to murder, assault with intent to disable, assault

with intent to rob, and a related handgun offense. Appellant was sentenced to 30 years for these convictions on December 2, 1991.[1]

On November 20, 1991, appellant's victim, Mr. Effiok Essiet, died, apparently from the injuries sustained during the assault perpetrated by appellant. Thus, the victim's death occurred subsequent to the termination of the first trial and approximately two weeks prior to the court's imposition of sentence.

On January 31, 1992, appellant was indicted for first degree felony murder and second degree murder based on the victim's death and the same conduct that had led to the earlier convictions. Appellant thereafter filed a Motion to Dismiss the indictment asserting that the second prosecution violated both the federal constitutional protection against double jeopardy and Maryland common law. Following a hearing held on September 29, 1992, the trial court denied appellant's motion.

## QUESTION PRESENTED

Appellant asserts that the trial court erred in denying his Motion to Dismiss on the grounds that the indictment against him for murder is barred by the protection against double jeopardy and Maryland common law.

## ANALYSIS

### 1. *Constitutional protection against double jeopardy.*

■ The Double Jeopardy Clause of the Fifth Amendment, "nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb," is enforceable against the states through the Fourteenth Amendment. *Benton v.*

---

1. The trial judge merged the counts of assault with intent to rob and assault with intent to disable into the charge of assault with intent to murder and sentenced appellant to thirty years on that count. The trial judge thereafter sentenced appellant to a concurrent sentence of twenty years on the charge of using a handgun in a crime of violence.

*Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969).

The parties agree that an exception to this Fifth Amendment prohibition against double jeopardy exists where a fact necessary for the prosecution of an offense had not occurred "at the time of the first prosecution." *Whittlesey v. State,* 326 Md. 502, 606 A.2d 225 (1992); *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). Accordingly, we shall limit our analysis and proceed directly to a discussion of the applicability of this exception to the case *sub judice.*[2]

In *Whittlesey,* the Court of Appeals defined this exception, often referred to as the *"Diaz* exception," as follows:

> [A] subsequent indictment on a second offense, otherwise barred by the Double Jeopardy Clause of the Fifth Amendment, is not barred if, at the time of prosecution for the earlier offense a reasonable prosecutor, having full knowledge of the facts which were known and in the exercise of due diligence should have been known to the police and prosecutor at that time, would not be satisfied that he or she would be able to establish the suspect's guilt beyond a reasonable doubt.

*Whittlesey,* 326 Md. at 525, 606 A.2d 225.

Appellant argues that the *Diaz* exception is not applicable to the case *sub judice* because the subsequent occurrence necessary to establish appellant's guilt in a murder prosecution, i.e., the victim's death, occurred prior to sentencing and was therefore known to the State before the "prosecution" in the first case ended. The State counters that the relevant inquiry in determining whether the second prosecution is proper is whether the prosecutor was aware of evidence

---

2. The parties do not contest that the offenses in the second indictment are the same for double jeopardy purposes as the offenses tried in the first case against appellant.

sufficient to support a murder conviction at the commencement of the earlier prosecution. As noted earlier, the victim in this matter died following appellant's conviction but prior to sentencing.

■ Our review of the relevant case law convinces us that in a case such as this, where a victim expires following the defendant's convictions for lesser included assault offenses, but the victim's death occurs prior to sentencing on those convictions, a subsequent prosecution on murder charges is not barred by the Fifth Amendment's Double Jeopardy Clause. The Supreme Court and the Court of Appeals have not directly and explicitly answered this question, but have intimated on several occasions that the relevant inquiry in determining the applicability of the *Diaz* exception allowing a second prosecution is whether the State knew, or through due diligence should have known, of facts establishing the accused's guilt at the time that the trial in the original prosecution is commenced.

In *Gianiny v. State,* 320 Md. 337, 577 A.2d 795 (1990), Judge Bloom addressed this question in dicta on behalf of the Court of Appeals, suggesting that in determining whether the *Diaz* exception is applicable, courts should look at the facts known to the State at the commencement of the first trial, or, perhaps as early as when an indictment is obtained:

At what point along the continuum between indictment and trial and conviction for the lesser charge the additional facts necessary to sustain the greater charge must have occurred or been discovered in order for the prosecution of the greater charge to be barred by conviction of the lesser is not firmly established. Justice Brennan's concurring opinion in *Ashe v. Swenson,* 397 U.S. 436, 453 n. 7 [90 S.Ct. 1189, 1199 n. 7, 25 L.Ed.2d 469] (1970), suggests that if a crime is not completed or not discovered, despite diligence on the part of the police "until after the commencement of a prosecution for other crimes arising from the same transaction, an exception to the same transaction rule should be made to permit a separate prosecution." In *Blackledge v.*

*Perry,* 417 U.S. 21 [94 S.Ct. 2098, 40 L.Ed.2d 628] (1974), the Court referred to *Diaz* as a case in which it was impossible to charge the defendant with a more serious crime "at the outset." The dissenting opinion of Justice Stevens in *Garrett v. United States,* 471 U.S. 773 [105 S.Ct. 2407, 85 L.Ed.2d 764] (1985), suggests that "at the outset" may be at time of indictment for the lesser offense.

*Gianiny,* 320 Md. at 341, note 3, 577 A.2d 795.

There is other authority that buttresses the suggestion that if the greater, inclusive offense is not completed at the time that the trial commences, the State is not barred from later bringing a second indictment charging the greater offense. For example, in *Brown v. Ohio,* 432 U.S. 161, 169 n. 7, 97 S.Ct. 2221, 2227 n. 7, 53 L.Ed.2d 187 (1977), the Supreme Court observed that:

> [a]n exception may exist where the State is unable to proceed on the more serious charge *at the outset* because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence. (Emphasis supplied).

In *Jeffers v. United States,* 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1977), a case decided the same day as *Brown,* the Supreme Court, in discussing the so-called "*Diaz* exception," stated:

> One commonly recognized exception is when all the events necessary to the greater crime have not taken place *at the time the prosecution for the lesser is begun.* (Emphasis supplied, citations omitted).

■ As a result of the foregoing, we are convinced that the prosecution of the case *sub judice* is not barred by the Double Jeopardy Clause of the Fifth Amendment because at the time the first trial on the related charges commenced an essential element of the crime of murder, the victim's death, had yet to occur. Accordingly, this case falls within the *Diaz* exception and the State is not barred by the Double Jeopardy Clause of the Fifth Amendment from subsequently bringing charges of first degree felony murder or second degree murder.

## 2. *Maryland common law.*

Appellant's second argument is based on Maryland common law of *autrefois convict* and is really composed of two separate arguments. In the first of these common law arguments, appellant maintains that the prosecution of the murder charges, following earlier convictions on lesser included offenses that are part of the "same offense," is barred under the Maryland common law doctrine of *autrefois convict.* Essentially, appellant is arguing that there is no corollary to the "*Diaz* exception" that is applicable to the Maryland common law of *autrefois convict.* Accordingly, appellant concludes that a strict application of the Maryland common law of *autrefois convict* bars the subsequent prosecution.

■ Appellant also argues that the timing of the death of the victim, coupled with the State's failure to object at appellant's sentencing for the aggravated assaults, forecloses any option that the State may have had to prosecute appellant for murder. In making this argument, appellant relies on the recent Court of Appeals decision in *Middleton v. State,* 318 Md. 749, 569 A.2d 1276 (1990), as well as this court's subsequent decision in *Griffiths v. State,* 93 Md.App. 125, 611 A.2d 1025 (1992), *cert. granted,* 329 Md. 337, 619 A.2d 547 (1993). Appellee argues that these cases are distinguishable from the matter *sub judice.*[3]

In *Middleton,* the Court of Appeals provided a succinct explanation of the stated Maryland common law of *autrefois convict:*

> The Maryland common law double jeopardy prohibition consists "of different but related rules," some of which

---

**3.** Citing *Whittlesey* and *Thomas v. State,* 277 Md. 257, 267 n. 5, 353 A.2d 240 (1976), appellee also seems to argue that Supreme Court decisions are controlling in cases presenting double jeopardy issues. This is of course true as it relates to the Fifth Amendment's Double Jeopardy Clause. Supreme Court decisions based on the Double Jeopardy Clause are not, however, controlling in our analysis under *autrefois convict,* a separate branch of double jeopardy law that is part of the common law of Maryland. *Griffiths,* 93 Md.App. at 133, 611 A.2d 1025.

embody "several distinct pleas at common law." *Pugh v. State,* 271 Md. 701, 705, 319 A.2d 542 (1974).

One of those common law pleas, *autrefois convict,* generally means that "where there had been a final [judgment] ... of ... conviction, ... the defendant could not be a second time placed in jeopardy for the particular offense." *Hoffman v. State,* 20 Md. 425, 434 (1863). *See* Blackstone, Commentaries On The Laws of England 335–336 (Lewis, ed. 1897); 1 Chitty, A Practical Treatise On The Criminal Law 376 (1819) ("The plea of *autrefois convict* depends ... on the principle that no man shall be more than once in peril for the same offense").

*Middleton,* 318 Md. at 756–7, 569 A.2d 1276.

In *Fields v. State,* 96 Md.App. 722, 727–28, 626 A.2d 1037 (1993), Judge Moylan stated:

In classic double jeopardy law, by contrast, the triggering event of jeopardy occurred only as a verdict was rendered. Only then had the historic event taken place which could support a plea of *autrefois acquit* or *autrefois convict....*

\* \* \* \* \* \*

In English common law, it was always the case that initial jeopardy was not deemed to attach until a verdict was rendered. That is still the position of the common law, both in England and in Maryland, today.

In *Ferenc v. State,* 563 So.2d 707 (Fla.App. 1 Dist.1990), the District Court of Appeal stated:

Although double jeopardy arguments are frequently raised as challenges to both conviction and sentence, the crux of such an argument is that the defendant should not have been *convicted* of multiple offenses arising out of a single incident. *See Carawan v. State,* 515 So.2d 161 (Fla. 1987). Therefore, a double jeopardy argument constitutes a challenge of a conviction, rather than a sentence. (Emphasis supplied).

While we agree with appellant's contention that the protection afforded defendant under *autrefois convict* is more expansive than that under the Fifth Amendment,[4] we must disagree with appellant's contention that the *Diaz* exception to the federal constitutional double jeopardy protection has no counterpart in the common law of *autrefois convict*. While the offenses in the first and second indictments are, under the required evidence test, the "same offense" for double jeopardy purposes, there is clear and longstanding authority under the common law of *autrefois convict* to allow a second prosecution for murder when assault with intent to murder was the only crime committed as of the time of the first trial. This longstanding exception is recognized in the common law of several of our sister jurisdictions and, we believe, is controlling despite the fact that the offenses charged in the two indictments might otherwise be considered the "same offense" for double jeopardy purposes.

For example, in *Commonwealth v. Ramunno*, 219 Pa. 204, 68 A. 184 (1907), appellant was convicted and sentenced on a charge of assault with intent to murder. Four days following imposition of the sentence, the assault victim died and appellant was thereafter tried and convicted of murder. Based on an analysis of *autrefois convict*, the Supreme Court of Pennsylvania held that the offenses were separate and apart and affirmed the conviction. That court explained:

When they were tried in 1906, they were tried for the only offense they had committed up to that time. When they were tried in 1907 for murder, it was for an offense of which they were guiltless in the preceding year. Murder is committed only when the victim of the assault dies. How, then, could the plea of *autrefois convict* have been successfully pleaded in bar of the indictment for murder when no murder had been committed at the time of the former conviction? Authorities are not only uniform, but without number, sustain the view of the trial judge that the prison-

4. *See, Griffiths v. State*, 93 Md.App. at 133, 611 A.2d 1025.

ers had never before been in jeopardy or punished for the crime of murder.

*Ramunno,* 68 A. at 185.

The Pennsylvania Supreme Court's holding in *Ramunno* was cited with approval by this court in *Thomas v. State,* 32 Md.App. 465, 361 A.2d 138 (1976), where our late Chief Judge Gilbert noted that in order for a plea of *autrefois convict* to be successful, the subsequent prosecution must be "for the same identical act ...," citing W. Blackstone, Commentaries on the Law of England § 336 (W. Lewis 1897).

Several other cases cited in the *Thomas* opinion are instructive on the point in question. In *Stewart's Case,* 5 Irv. 310, a Scottish case decided between 1852–1867, it was held that:

> There can never be a crime of murder till the party assaulted dies; the crime has no existence in fact or law till the death of the party assaulted. Therefore, it cannot be said that one is tried for the same crime when he is tried for assault during life, and tried for murder after the death, of the injured party. That new element of the injured person's death is not merely a supervening aggravation, but it creates a new crime.

*Thomas,* 32 Md.App. at 471, note 6, 361 A.2d 138, citing 5 Irv. at 314.

The nature of the common law of *autrefois convict* and exceptions to its uniform application were clearly set forth in *State v. Littlefield,* 70 Me. 452 (1880), a case cited in the *Thomas* decision as well as in the Supreme Court's decision in *Diaz:*

> The general rule, by which it is to be determined whether an acquittal or conviction on one indictment is a good bar to another, is stated by many authorities, in substance, as follows: if the first indictment were such as the prisoner might have been convicted upon, by proof of the facts contained in the second indictment, an acquittal or conviction on the first indictment will be a bar to the second. (Citations omitted).

This general rule is, however, subject to this exception. When, after the first prosecution, a new fact supervenes, for which the defendant is responsible, which changes the character of the offense, and together with the facts existing at the time constitute a new and distinct crime, an acquittal or conviction of the first offense is not a bar to an indictment for the other distinct crime. (Citations omitted).

*Littlefield,* 70 Me. at 458.

Two cases, *People v. Williams,* 61 Mich.App. 642, 233 N.W.2d 122 (1975), and *State v. Randolph,* 61 Idaho 456, 102 P.2d 913 (1940), closely parallel the case *sub judice* in that, at the time of sentencing, the death of the victim was known to the prosecution.

In *Williams,* the defendant had pled guilty to breaking and entering, but, before he was sentenced, the victim died. The defendant was charged with felony murder and then one week later sentenced on the lesser crime. The defendant subsequently pled guilty to second-degree murder. The Court of Appeals of Michigan stated:

At the time defendant entered his earlier plea, however, the crime of felony murder was not complete because Mr. Glancy had not yet died. The question therefore becomes whether the same transaction test of double jeopardy bars prosecution for all crimes committed during one criminal transaction, complete and incomplete, discovered and undiscovered, once a person has been convicted of a crime arising out of that criminal episode. We hold that it does not.

\* \* \* \* \* \*

We hold, therefore, that since *the crime with which defendant was here charged was not complete at the time of his earlier plea,* his conviction is not barred by double jeopardy.

*Williams,* 233 N.W.2d at 124 (emphasis added).

In *Randolph,* the defendant had pled guilty to assault and battery, but, before he was sentenced, the victim died. On the same day as sentencing on the lesser crime, the defendant was charged with second-degree murder. The defendant subse-

quently was convicted of manslaughter. The Supreme Court of Idaho stated that:

> [T]he State exercised its choice as soon as death ensued by then instituting the homicide charge. It could not have done so before plea of guilty, because Peasley was not then dead. Jeopardy on the acts and omissions resulting in death had not attached and could not attach before death.
>
> \* \* \* \* \* \*
>
> No prejudice resulted therefrom because if the felony charge would lie if death ensued (as for changed or different acts and/or omissions) after sentence was pronounced, it would equally lie as against the plea of former jeopardy after plea of guilty to the misdemeanor charge *because jeopardy had attached at the time of the plea.*

*Randolph,* 102 P.2d at 914–15 (emphasis added) (citations omitted).

As a result of the foregoing, we are convinced that *autrefois convict* does not bar a subsequent trial on murder charges when the victim dies following an initial trial on lesser included assault charges.

Appellant, however, has one final argument relating to *autrefois convict.* He maintains that since the State was aware prior to sentencing in the first case that Mr. Essiet had in fact died, the State, by not seeking a delay in the sentencing on those charges, forfeited its right to go forward on the murder charges. Appellant relies on *Middleton* and *Griffiths* in support of this argument.

In *Middleton,* the Court of Appeals was faced with a situation wherein the defendant was charged with a variety of offenses, including first and second degree rape, attempted first degree sexual offense, and use of a handgun in the commission of a felony. The jury convicted as to both first and second degree rape as well as the attempted sexual offense, but acquitted the appellant on the handgun charge. The trial judge then vacated the verdict as to the first degree rape, as the only element raising the rape to first degree was the alleged use of a handgun in the commission of the rape,

the acquittal on the handgun charge created an inconsistency in the two verdicts. He then imposed a 15–year sentence on the second degree rape conviction and, effectively, an additional five-year sentence on the attempted sexual offense.

The trial judge, upon a request for clarification, thereafter declared that his intent in vacating the verdict was to have the first degree rape charge re-tried. Ultimately, upon a Request for Reconsideration filed by the State, the trial court reinstated the guilty verdict on the charge of first degree rape and imposed a sentence of 15 years to run concurrently with the previous sentence on the second degree rape.

The Court of Appeals, based exclusively on the Maryland common law, concluded that the first and second degree rape charges constituted the "same offense" for double jeopardy purposes and held that further prosecution of the greater offense is barred when sentence is imposed on the lesser included offense.

In *Griffiths*, this court was faced with a similar set of facts and reached a similar result. Appellant in that case was convicted on a count of possession of cocaine, and, after the jury was unable to reach a verdict as to a count alleging possession of cocaine with an intent to distribute, a mistrial was declared. The trial court thereafter sentenced Griffiths prior to the re-trial on the second count.

On appeal, Griffiths argued that under the Court of Appeals holding in *Middleton*, a second trial on the possession with intent to distribute count was barred under the common law of *autrefois convict*. He maintained that since simple possession is a lesser included offense of the count alleging possession with intent to distribute, they are the "same offense" for double jeopardy purposes, and therefore, having already been sentenced on the simple possession count, appellant could not be re-tried on the greater offense. Agreeing with appellant, we reversed appellant's conviction on the possession with intent to distribute count, holding that, under *Middleton*, further prosecution of the greater offense is barred when sentence is imposed (and thus judgment entered) on the lesser

included offense.  After resolving this case, our opinion went on to remind trial judges and the State that:

It is important that trial judges fully understand the effect of *Middleton* and, when faced with this kind of situation, unless there are exceptional circumstances requiring a different course, that they defer imposing sentence on the lesser included offense until the greater offense is re-tried or the State abandons the prosecution.

*Griffiths,* 93 Md.App. at 134, 611 A.2d 1025.

■ The State is quick to point out that the matter *sub judice* is factually distinguishable from both *Griffiths* and *Middleton* since the murder charges in the case at bar were not contested in the first trial.  At the time of the first trial the State had charged appellant with assault with intent to murder since the victim of the assault had not yet died.  Thus, the State argues, appellant was not *re-tried* on the murder charge in violation of *Griffiths* and *Middleton.*

We agree with the State that the matter *sub judice* is distinguishable from both *Middleton* and *Griffiths* cases because appellant had not been, and indeed could not have been, charged with the murder at the time of the earlier trial.

Accordingly, we find no basis for reversing the trial judge's denial of appellant's motion to dismiss.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**